UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KASANDRA MILLER,

   Plaintiff,

      v.                                       No. 3:19-cv-00306(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

   Defendant.

———————————————X

## **RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Kasandra Miller's, application for Title II disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. #14]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #15]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court denies Plaintiff's motion to reverse/remand and grants the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims.  The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the

claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the

Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

   a. **Facts**

   Plaintiff filed her DIB and SSI application on February 11, 2016, alleging an onset of disability as of January 1, 2012. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On December 28, 2017, a hearing was held before Administrative Law Judge Matthew Kuperstein ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On February 8, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On January 14, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

   Plaintiff was fifty-two years old on the alleged onset of disability date. (R. 27). She completed the eleventh grade and can communicate in English. (R. 27). The ALJ did not find sufficient evidence of Plaintiff's past relevant work to make a finding at Step Four of the sequential evaluation. (R. 27). Under the "expedited process" sections of 20 C.F.R. §§404.1520(h) and 416.920(h), the ALJ proceeded to Step Five. (R. 27). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##13-1; 14-1]. The Court adopts these statements and incorporates them by reference herein.

b.  **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2012. (R. 18). At Step Two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder, history of substance abuse, and asthma/emphysematous. (R. 18). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 19-21). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The clamant is unable to do work that involves understanding and remembering complex directives. The claimant is further limited to work that involves routine tasks; to work that does not involve strict time or production quotas; and the claimant needs to be able to avoid concentrated exposure to pulmonary irritants such as dust, fumes, gases, or poor ventilation.

(R. 21).

At Step Four, the ALJ could not determine whether Plaintiff had past relevant work and, pursuant to the "expedited process" provided for in the regulations, proceeded to Step Five. (R. 27). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 27-28). Accordingly, the ALJ determined that Plaintiff was not disabled. (R. 28).

II. **DISCUSSION**

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

---

[3]   Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

1. **Step Two**

   At Step Two, ALJ Kuperstein found that plaintiff suffered from several severe impairments. However, Plaintiff contends that the ALJ failed to properly consider all of her impairments, at this step of the sequential evaluation. [Doc. #14 at 7-9]. The ALJ did not err at Step Two.

   A Step Two determination requires the ALJ to determine the severity of the plaintiff's impairments. 20 C.F.R. §§404.1520(a)(4)(ii); *see also id.* at (c). At this step, the plaintiff carries the burden of establishing that she is disabled, and must provide the evidence necessary to make determinations as to her disability. 20 C.F.R. §404.1512(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* Social Security Ruling ("SSR") 96–3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). Impairments that are "not severe" must be only a slight abnormality that has a minimal effect on an individual's ability to perform basic work activities. *Id.*

   > At step two, if the ALJ finds an impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Social Security,* 73 F. App'x. 801, 803 (6th Cir. 2003). While the Second Circuit has not directly stated that incorrectly applying the step two legal standard is harmless error, when some of a claimant's impairments are determined to be severe and others not, other circuits have so stated. *See, e.g., Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). A harmless error approach is consistent with the Second Circuits finding that step two severity determinations are to be used only to screen out de minimis claims. *See Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995).

   *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa*, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)).

The analysis at Step Two is wholly independent of the analysis at later steps. Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at Step Two, "even if he ... erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." *Salles v. Comm'r of Soc. Sec.,* 229 F. App'x. 140, 145 n. 2 (3d Cir. 2007). "As such, where the Commissioner finds that the claimant suffers from even one severe impairment, any failure...to identify other conditions as being severe does not compromise the integrity of the analysis." *Ross v. Astrue,* Civil Action No. 08–5282 (SDW), 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (citing *Salles,* 229 F. App'x at 145 n. 2; *Rivera v. Comm'r of Soc. Sec.,* 164 F. App'x 260, 261 n. 2 (3d Cir. 2006)); *see, e.g.,* Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error [] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Here, the ALJ found that Plaintiff had the severe impairments of depressive disorder, history of substance abuse and asthma. (R. 18). He found that the impairments of "high blood pressure, borderline intellectual functioning, neurocognitive disorder, history of stroke (appears to be substance abuse related), seizure disorder (appears to be substance abuse related), history of pulmonary tumor, and anemia [were] nonsevere." (R. 19).

Nevertheless, because the ALJ did find several severe impairments and proceeded with the sequential evaluation, all impairments, whether severe or not, were considered as part of the remaining steps. Indeed, the ALJ's decision reflects that he considered plaintiff's other alleged impairments in following the above-described sequential process. *See* R. 19, 22-23 (analyzing treatment for asthma and hypertension) R. 21-22 (analyzing activities of daily living), R. 22

(reviewing diagnostic imaging of chest, heart, brain (showing no evidence of intracranial hemorrhage or stroke), ribs and bone scan); R. 22 (reviewing hospital records of a seizure secondary to alcohol and cocaine use); R. 23-25 (analyzing psychiatric records); R. 25 (assessing the opinion State agency physicians, psychiatric consultative examiner Dr. Jeffrey Cohen, Ph.D., Rachel Postupack, PhD. and Chelsea McIntosh, Psy.D. ).

The Court finds that the ALJ's reference to a "pulmonary tumor" rather than a "pituitary tumor" to be harmless error. (R. 18, Doc. #14-2 at 9). The record contains medical history stating that Plaintiff underwent removal of a pituitary tumor when she was sixteen years old, over 40 years prior to her claim for disability. (R. 327 (in a hospital admissions statement reporting a "remote history" for pituitary tumor), R. 532 (psychiatric consultative examiner Dr. Cohen noting "prior onset of cognitive limitations were the result of having a pituitary tumor when she was a teenager"), R. 598 (reporting "pituitary surgery when she was 16"). These references in the record are solely based on Plaintiff's self-report. Indeed, Plaintiff also told the consultative examiner that she had two strokes, which is not supported by the medical evidence, and that she had no alcohol or drug "dependency or addiction," which is also unsupported. The record contains no objective medical evidence demonstrating that Plaintiff was unable to perform basic work-related activities as a result of pituitary surgery, more than 4 decades ago, or that her alleged "cognitive limitations" were a result of the surgery. There is no indication that Plaintiff received special education services post-surgery and her work history report demonstrates that she was capable of work. Finally, passing references in medical records and "diagnoses alone are insufficient to establish" that an impairment is severe at Step Two. Salles, 229 F. App'x at 145. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and

8

laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4P, 1996 WL 374187, at *1 (S.S.A. July 2, 1996).

Accordingly, the ALJ's failure to specifically determine whether each of plaintiff's additional claimed impairments was severe is harmless error, and would not support a reversal of the Commissioner's decision. Therefore, the Court finds no reversible error at Step Two of the sequential evaluation.

2. **The RFC**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, she argues that the ALJ erred in his weighing of the opinion evidence and maintains that the RFC is not supported by substantial evidence. The Commissioner responds that the ALJ properly weighed the medical opinions, and that the assessed RFC is supported by substantial evidence.

A. Weighing of Opinion Evidence

Plaintiff argues that the ALJ erred in the weight assigned to the opinion of Dr. Jeffrey Cohen, the consultative psychiatric examiner, and the joint opinion of Plaintiff's treating psychiatrist and psychologist, Drs. Rachel Postupack and Chelsea McIntosh. Finally, Plaintiff contends that the ALJ erred in assigning "significant weight" to the opinion of State agency psychologist Dr. Julien Lev. [Doc. #14-2 at 10-16].

The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. §404.1527(c)(2). When a treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d

9

370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight allotted. *Burgess,* 537 F.3d at 129. While an ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand, *Halloran*, 362 F.3d at 33, the ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Consultative Examiner, Dr. Jeffrey Cohen, Ph.D.

Plaintiff argues that the ALJ erred in assigning the May 23, 2016, opinion of Consultative Examiner Dr. Jeffrey Cohen, Ph.D., "little weight." (R. 26; 529-32). Dr. Cohen completed a Mental Status Examination, and found that Plaintiff presented appropriately, she was cooperative with a good attitude, normal gait, and noted that she had an ongoing relationship with a boyfriend. (R. 531). On examination, Dr. Cohen opined that Plaintiff's intellectual functioning was within the borderline range, she could perform simple addition, subtraction, and make change, but she had difficulty with her short-term and working memory. (R. 531). Based on Plaintiff's self-report, Dr. Cohen opined that Plaintiff would have difficulty with calculations and financial processes, poor abstract reasoning ability, and diminished mood, at times quite depressed with anhedonia, fatigue. (R. 532).

The ALJ assessed "little weight" to Dr. Cohen's opinion because it was based predominately on Plaintiff's unreliable and subjective statements. (R. 26). An ALJ may properly discount an opinion that is based heavily on a claimant's subjective allegations when those allegations are not credible or not supported by objective medical evidence. *Gates v.* Astrue, 338 F. App'x 46, 49 (2d Cir. 2009 (finding that the ALJ's decision to accord limited weight to a doctor's report was based on an unreliable foundation; the claimant's subjective complaints and their internal inconsistency); *see also Polynice v.* Colvin, 576 F. App'x 28, 31 (2d Cir. 2014).("Much of what [claimant] labels "medical opinion" was no more than a doctor's recording of [claimant's] own reports of pain."). Here, the ALJ's assessment of Dr. Cohen's opinion is supported by substantial evidence. The ALJ correctly noted that Plaintiff "did not report … that she had a recent drug overdose or her ongoing use of cocaine; instead, she reported having a stroke in August 2015," with an inability to speak or walk, which is "not substantiated by the medical evidence." (R. 26). Plaintiff's overly restrictive self-reporting is also unsubstantiated by the record. Plaintiff reported that she did not require any reminders to take her medication (R. 263), she was capable of preparing and cooking her own meals daily (R. 264), she enjoyed playing with puzzle books as a hobby (R. 47-48), and she testified that she did not have problems remembering her appointments (R. 47). Moreover, although Plaintiff reported difficulties with her cognitive functioning and calculations to Dr. Cohen, all of the psychiatric treatment notes show that she had normal cognitive function, her thought process and ability to perform simple calculations were intact, she exhibited logical/coherent thought content, and her judgment and insight were only minimally impaired. (R. 534, 539, 693, 700, 713, 735, 740, 745). Accordingly, the ALJ did not err in assigning "little weight" to Dr. Cohen's opinion and this finding is supported by substantial evidence.

Dr. Rachel Postupack, Ph.D. Treating Psychologist

Plaintiff next claims that the ALJ erred in assigning "little weight" to the opinion of her treating psychologist Dr. Postupack, Ph.D. (R. 26; Doc. #14-2). On January 25, 2017, Dr. Postupack completed a Medical Source Statement after four therapy sessions with Plaintiff. (R. 569-73). The opinion was co-signed by psychiatrist Dr. Chelsea McIntosh. Dr. Postupack diagnosed Plaintiff with moderate depression noting that she last saw plaintiff on January 10, 2017, and that Plaintiff started medication on December 6, 2016. (R. 569). On December 8, 2016, the doctor administered a MOCA ("Montreal Cognitive Assessment"). Plaintiff "scored below normal limits (24/30) with a 1 point correction for education. (R. 570). The test was administered two days after Plaintiff started medication. The doctor noted that Plaintiff was fully oriented; maintained attention and effort; had difficulty drawing a 3d figure; misnamed 1 animal; serial 7s "slowed response on fluency task, abstraction; and recalled 3 of 5 memory words. (R. 570). The doctor noted that the "[r]esults are consistent with cognitive symptoms of depression and may improve with mood." (R. 570). Speech characteristics were described as "slowed and pt responds briefly to questions;" thought content was normal, mood was "depressive [with] flattened affect." The doctor stated that Plaintiff's judgment was intact, and insight was assessed as moderately impaired as "Pt has a difficult time identifying contributors to depressed mood. (R. 570). With regard to activities of daily living, the doctor opined that Plaintiff had an excellent ability to care for physical needs; using good judgment regarding safety and dangerous circumstances; and handling frustration appropriately and a better than average or infrequent problem taking care of personal hygiene; and a limited ability to use appropriate coping skills.(R.571). With regard to social interaction, the doctor found that plaintiff had an excellent ability respecting and responding appropriately to others in authority and an average ability interacting appropriately; asking questions or requesting assistance and getting along with others.

12

(R. 572). Finally, with respect to task performance the doctor opined that plaintiff had an excellent ability carrying out single-step instructions; an average ability changing from one simple task to another. She would sometimes have a problem carrying out multi-step instructions, focusing long enough to finish simple activities or tasks and reforming basic activities at a reasonable pace; but would frequently have a problem persisting in simple activities without interruption from psychological symptoms. (R. 572).

Substantial evidence supports the ALJ's finding giving little weight to Dr. Postupack's opinion. First, the ALJ correctly noted that the evaluation was completed after only four appointments and two months of treatment and the doctor did not address Plaintiff's ongoing alcohol and drug use. (R. 26). As previously noted, Plaintiff started medication to treat her depression in early December 2016. The ALJ's assessment giving little weight to Dr. Postupack's finding that Plaintiff "had frequent problems using appropriate coping skills and persisting in simple activities without interruption from psychological symptoms" is supported by substantial evidence. (R. 26). Defendant correctly points out that Dr. Postupack's January 2017, opinion reflects that she based her opinion largely on Plaintiff's subjective complaints which are inconsistent with the record of evidence. For example, Plaintiff reported that her impairments did not affect her memory, concentration, ability to understand or follow instructions, or her ability to complete tasks. (R. 267). At the hearing, Plaintiff testified that she was able to perform simple tasks, such as cooking, she had no difficulty following recipes, she could mop her floor, although it would take her longer than average, enjoyed completing puzzle books for up to two hours at a time and had no difficulties focusing on television for an hour or more. (R. 45, 47-48, 50-51). Indeed, Dr. Postupack's opinion is inconsistent with her own treatment notes, and other mental health treatment providers, wherein they repeatedly found that

13

Plaintiff 's thought process, judgment and insight were intact, she was oriented in time, place and person, and they described her depression as moderate to mild. (R. 534 (11/8/16); R. 538 (11/1/16-seen by Erin Fowler LCSW); R. 745 (12/8/16); R. 740 (1/10/17); R. 735 (1/24/17); R. 732 (2/20/27); R. 713-14 (6/15/17-Plaintiff reporting sleep and mood has improved and she "wishes to continue what she is doing on her own at this time."); R.711 (6/20/17-Plaintiff reporting "significant improvement in her symptoms," normal sleep, mood is significantly better, reports getting out more frequently, active around her home taking care of tasks and cleaning); R. 698-705 (10/24/17-seen by Dawn Berger, Ph.D.). Notably, the ALJ's RFC incorporated some of Dr. Postupack's findings by limiting Plaintiff to simple, routine work, with no strict time or productions quotas. (R. 21). The Court finds that the ALJ's decision to discount the opinion of Drs. Postupack and McIntosh is not error in this case. An ALJ's RFC finding need not "perfectly correspond with" any medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, an ALJ is "entitled to weight all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*

Accordingly, the ALJ did not err in assigning "little weight" to Drs. Postupack and McIntosh's opinion and this finding is supported by substantial evidence.

State Agency Psychological Consultant Dr. Julian Lev

Finally, the Court finds no error in the ALJ's assignment of "significant weight" to the opinion of State agency Psychological Consultant Dr. Julien Lev, who reviewed the evidence of record on February 17, 2017, and opined that Plaintiff had the functional capacity to perform simple tasks in a low stress, stable work environment. (R. 26 (citing R. 114-18). "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a

14

whole." *Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) (citing *Lewis v. Commissioner,* No. 00–CV–1225, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005)). "It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability." Colvin v. Astrue, No. 09-CV-946S, 2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011). Such reliance is appropriate where, as here, the opinion of the state agency physician is supported by the evidence of record. "The hearing officer's choice to accept a non-treating, non-examining physician's assessment is completely permissible within the regulations "provided there is support for the result in the record." *Monroe v. Barnhart*, 471 F. Supp. 2d 203, 212-13 (D. Mass. 2007) (quoting Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994)). For the reasons stated above, the ALJ did not err in finding that treatment records received after Dr. Lev's opinion are consistent with the doctor's assessment that Plaintiff could perform simple work. (R. 26); *see Farrell v. Astrue*, No. 5:10-CV-284, 2011 WL 6941390, at *6 (D. Vt. Nov. 23, 2011), report and recommendation adopted, No. 5:10-CV-284, 2012 WL 12538 (D. Vt. Jan. 3, 2012) ("[I]n many cases, a state agency consultant's opinion properly contributes to the substantial evidence in support of an ALJ's RFC determination. "). Accordingly, the ALJ did not err in assigning significant weight to the State Agency Psychologist Dr. Lev.

B. Adequacy of the RFC

Finally, Plaintiff argues that the RFC is insufficient because the ALJ should have limited Plaintiff to light exertional work and should have included occasional off-task behavior in the RFC.

Plaintiff bears the burden of proving she cannot perform the assessed RFC. *See* 20 C.F.R. §§ 404.1545; 416.945. She is unable to do that here, and the assessed RFC is supported by substantial evidence. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

With respect to time off-task, the Second Circuit recently held that an ALJ could reject the opinions of treating physicians as to a claimant's time off-task and absenteeism when those opinions were "critically flawed" and "inconsistent with other substantial evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Here, as in *Smith*, the ALJ pointed to ample evidence contradicting the opinions that Plaintiff would not be able to sustain concentration and pace and maintain regular attendance. When there is conflicting evidence in the record, the court should defer to the ALJ's resolution of it "and accept the weight assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion." *Id.*

Likewise, Plaintiff has not shown she needs to be limited to light exertional work. Plaintiff has provided no opinion evidence, or any objective medical evidence to support such a limitation. The record is absent of any medical opinion or functional assessment supporting such a limitation. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.")(citing cases). Substantial evidence of record supports the ALJ's RFC finding that Plaintiff has the "capacity to perform a full range of work at all exertional levels" but must "avoid concentrated exposure to pulmonary irritants such as dust, fumes, gases or poor ventilation." (R. 21). Treatment notes fail to support any purported physical limitations and repeatedly reflect that her gait (R. 428, 471,

477, 531), range of motion and strength were normal. (R. 328, 467, 592, 593, 616, 617). Indeed, Plaintiff completed a Function Report wherein she reported that she shopped in stores and cooked her meals and reported that her impairments did not affect her ability to squat, walk, sit, bend, stand, reach, or use her hands. (Tr. 264, 267). At the hearing, plaintiff testified she was not limited in her ability to stand or walk, and she characterized her limitations as mental limitations rather than physical limitations. (R. 40-42, 45-46). The limitations asserted by plaintiff are not supported by the evidence of record. The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Accordingly, the Court finds that the ALJ did not err in assessing plaintiff's physical RFC and that it is supported by substantial evidence of record.

### III. CONCLUSION

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

Therefore, after a thorough review of the record and consideration of all arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #14]** is

**DENIED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #15]** is **GRANTED**.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this 25th day of October, 2019, at Bridgeport, Connecticut.

    */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge